## KENNISON v. LUNDY et al.

No. 2652.   Decided January 29, 1915 (146 Pac. 552).

1. SPECIFIC PERFORMANCE—SUFFICIENCY OF EVIDENCE—PAROL AGREEMENT. In an action for specific performance of a parol agreement to exchange land, evidence *held* not to show that any parol agreement between the parties was ever consummated. (Page 502.)

2. EXCHANGE OF PROPERTY—ABROGATION OF CONTRACT—REINSTATEMENT. Where a parol agreement for the exchange of property was abrogated by a subsequent unconditional written contract, the failure or breach of such subsequent contract could not reinstate the parol agreement. (Page 504.)

3. SPECIFIC PERFORMANCE—FRAUD—REMEDY AT LAW. One defraud-
ed in a contract for the exchange of property is not entitl-
ed to specific performance, but his remedy is to go into court and
rescind the contract upon the ground of fraud and ask to be
placed in statu quo, in which action he may recover for dam-
ages suffered by reason of the fraud. (Page 504.)

4. SPECIFIC PERFORMANCE—EVIDENCE—CONSTRUCTIVE TRUST. A judg-
ment for plaintiff for specific performance could not prevail on
the theory of a constructive trust, where there was no evidence
to show the existence of the parol agreement on which the
judgment was based. (Page 505.)

Appeal from District Court, Third District; *Hon. Geo. G.
Armstrong,* Judge.

. Action by David Kennison, Jr., against Granville E. Lundy
and another.

Judgment for plaintiff. Defendant Lundy appeals.

REVERSED AND REMANDED for new trial.

*F. E. McCracken* and *C. E. Norton* for appellant.

*Zane, Stringfellow, & Whitaker,* for respondent.

### APPELLANT'S POINTS.

No estate or interests in lands, other than leases, for a term
not exceeding one year, nor any trust or power over or con-
cerning lands, or in manner relating thereto, shall be created,
granted, assigned, surrendered or declared unless by act or
operation of law, or by deed or conveyance, in writing, sub-
scribed by the party creating, granting, assigning, surren-
dering, or declaring the same or by his lawful agent thereunto
authorized in writing. (Section 2461, Compiled Laws of Utah,
1907, and Utah decisions cited in foot notes.) Nothing in this
title contained shall be construed to abridge the power of
courts to compel the specific performance of agreements in
case of part performance thereof. (Section 2477, Compiled
Laws of Utah, 1907, and Utah cases cited in foot notes.) A
parol agreement to convey land must be shown by definite,
unequivocal evidence, before specific performance will be

ordered. (*Price* v. *Lloyd,* 31 Utah 86; 86 Pac. 767; Pomeroy Specific Performance, page 144; 4 Pomeroy, Eq. Jur. (3d Ed.), section 1409; 2 Story Eq. Jur.' (13th Ed.), section 761; *Glass* v. *Golbert,* 102 Mass. 34.)

### RESPONDENT'S POINTS.

Fraud properly includes all acts, omissions, and conceal-ments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. (*Chesterfield* v. *Janssen,* 2 Ves. Sr. 125; *Gale* v. *Gale,* 19 Barb. 251; 1 Fonb. Eq. B. 1, chap. 2, No. 3, note r.) Wherever by misrepresentation or any other practice at variance with honest fair dealing, one is deceived, entrapped or surprised into a conveyance of the legal title to his property, courts of equity will not allow the fradulent grantee to avail himself of the transaction to enjoy the beneficial interest, but will construe him to be a trustee, and will order him to account upon equitable principles, and to make a reconveyance of the property. (*Tyler* v. *Black,* 54 U. S. 13 How. 231 (14 L. Ed. 124); *Boyce* v. *Grundy,* 28 U. S. 3 Pet. 210 (7 L. Ed. 655); *Smith* v. *Richards,* 38 U. S. 13 Pet. 26 (10 L. Ed. 42); *McAllister* v. *Barry,* 2 Hayw. (N. C.) 290; *Walker* v. *Dunlop,* 5 Hayw. (Tenn.) 271; *Stephenson* v. *Taylor,* 1 A. K. Marsh. 235; *Pitts* v. *Cottingham,* 9 Port. (Ala.) 675; *Harris* v. *Williamson,* 4 Hayw. (Tenn.) 124; *Lewis* v. *McLemore,* 10 Yerg. 206; *Spence* v. *Duren,* 3 Ala. 251; *Harris* v. *Carter,* 3 Stew. (Ala.) 233; *How* v. *Weldon,* 2 Ves. Sr. 517; *Neville* v. *Wilkinson,* 1 Bro. Ch. 543; *Earl of Bath's Case,* 3 Ch. Cas. 56; *Willan* v. *Willan,* 16 Ves. Jr. 82; *Say* v. *Barwick,* 1 Ves. & B. 195; *Barnesly* v. *Powel,* 1 Ves. Sr. 289; *Matthew* v. *Hanbury,* 2 Vern. 187; *Bridgman* v. *Green,* 2 Ves. Sr. 627; *Evans* v. *Llewellin,* 1 Vox. Ch. 340; *Bennet* v. *Vade,* 2 Atk. 324; Madd. Ch. Pr. 342; *Clermont* v. *Tasburgh,* 1 Jac. & W. 112.) If one party obtains the legal title to property not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity

carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. (1 Perry, Tr. 166; Spence, Eq. Jur. 511-512; *McLane* v. *Johnson*, 43 Vt. 48; *Collins* v. *Collins*, 6 Lans, 368; *Thompson* v. *Thompson*, 16 Wis. 94; *Pillow* v. *Brown*, 26 Ark. 240; *Ryan* v. *Dox*, 34 N. Y. 307; *Dodd* v. *Wakeman*, 26 N. J. Eq. 484; *Green* v. *Ball*, 4 Bush. 586; *Hunt* v. *Roberts*, 40 Me. 187; *Hoeges* v. *Howard*, 5 R. I. 149; *Laing* v. *McKee*, 13 Mich. 124; *Nelson* v. *Worrall*, 20 Iowa 469; *Coyle* v. *Davis*, 20 Wis. 564; *Hidden* v. *Jordan*, 21 Cal. 92; *Sandfoss* v. *Jones*, 35 Cal. 481; 1 Pom. Eq. Jur. 137.)

"A resulting trust may arise where an estate is purchased in the name of one person, but the money or consideration is paid by another." (39 Cyc. 104; *Trapnall* v. *Brown*, 19 Ark. 39; *Williams* v. *Williams*, 108 Iowa 91; 78 N. W. 792; *Dunn* v. *Zwilling*, 94 Iowa 233; 62 N. W. 746; *Lloyd* v. *Spillett*, 2 Atk. 148; 26 Eng. Reprint 493; Barn. Ch. 388; 27 Eng. Reprint 689; 2 Eq. Cas. Abr. 745; 22 Eng. Reprint 632.) "It is sufficient to constitute a resulting trust if the consideration money upon the purchase was advanced by some other person as a loan." (*Russell* v. *Allen*, 10 Paige 249; Brief Book, 2 L. R. A. 146.)

"Where upon a purchase of property, the conveyance of the legal title is taken in the name of one person, while the consideration is given or paid by another, the parties being strangers to each other, a resulting trust immediately arises from the transaction, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds." (Perry, Trusts, Sec. 126; *Jackson* v. *Matsdorf*, 11 Johns. 91; *Botsford* v. *Burr*, 2 Johns. Ch. 408; *White* v. *Carpenter*, 2 Paige 218; *Forsyth* v. *Clark*, 3 Wend. 638; *Brown* v. *Cherry*, 59 Barb. 628; *Kellogg* v. *Wood*, 4 Paige 579; *Foote* v. *Colvin*, 3 Johns, 218.)

FRICK, J.

On the 23rd day of April, 1913, the plaintiff commenced this action against Granville E. Lundy and D. McMillan for

specific performance of an alleged parol agreement, in which, it was alleged, said Lundy had agreed to convey to the plain-tiff a part of lot 5, block 118, plat A, Salt Lake City, being a parcel of ground 3x10 rods lying in North Salt Lake. Upon a hearing in November, 1913, plaintiff amended his complaint and prayer for relief, and then, in addition to his prayer for specific performance, also asked that the court decree that said Lundy be declared a trustee and was hold-ing the title to said parcel of land in trust for the plaintiff. The court, on the 24th day of January, 1914, made findings of fact and conclusions of law in favor of the plaintiff, and entered judgment against the defendant Lundy only, requir-ing him to convey said parcel of ground to the plaintiff, sub-ject to an incumbrance of $1,000. Nothing was claimed against defendant McMillan, and why he was made a party to the action is not made apparent. We shall treat him as out of the case, and hereafter Mr. Lundy will be called de-fendant. He alone appeals from the judgment aforesaid and assigns numerous errors, among others, that the court erred in its findings of fact, conclusions of law, and judgment. Both parties have filed printed abstracts, in neither of which are contained any findings or judgment. Indeed, the printed abstracts in many respects are so incomplete that our con-clusions are based entirely upon the proceedings and evidence as the same are found in the transcript and bill of exceptions.

The facts upon which the findings and judgment are based, briefly stated, are these: On the 26th day of October, 1912, the plaintiff entered into a written contract with the Co-opera-tive Investment Association, whereby he agreed to buy from it a certain parcel of land in section 28, township 2, range 1 east, containing about ten acres, for the sum of $2,400, payable as follows: $100 in cash, and the remainder in monthly in-stallments of $25 each, including seven per cent interest. A deed of conveyance was to be delivered to the plaintiff when the whole purchase price was paid, and in the meantime he was given and took possession of said parcel of land, which was improved and had two small dwelling houses upon it. The contract contained a forfeiture clause, in which, in case of de-fault in payment of any of the principal or interest, the plain-

tiff forfeited his equity. Some time in December, 1912, the plaintiff took said contract to Mr. McMillan, who was a real estate agent in Salt Lake City, for the purpose of having him find some one who might be willing to exchange a house and lot in Salt Lake City for plaintiff's equity in said land. Early in January, 1913, Mr. McMillan introduced plaintiff to the defendant, who, McMillan said, had expressed a willingness to trade or exchange a certain house and lot (that is, the 3x10 rods in block 118 aforesaid), which he said he owned in North Salt Lake, for plaintiff's equity in the land aforesaid. The parties met, and, as McMillan and plaintiff testified, talked over the contract and agreed upon the following terms: That the defendant would accept plaintiff's equity in the land aforesaid at the valuation of $2,000, and that he would sell the house and lot in North Salt Lake to the plaintiff for $3,000; the plaintiff to raise the difference, namely, $1,000 (the defendant says $1,300), by mortgaging said house and lot. Plaintiff made an assignment of his contract to Helena M. Kinney on January 17, 1913, who, it seems, on that day still held the title to the house and lot in question. The contract and assignment was by plaintiff left with McMillan. Things ran along for a few days, during which time McMillan says he sought to obtain the $1,000. Within a few days, however, as he and the plaintiff both testified, the defendant said that he would not make the trade or exchange of the house and lot for plaintiff's equity in the ten-acre tract, and he, as they put it, "called the deal off," or said "the deal is off."

It appears that on the 17th day of January, 1913, and about the time of the negotiations, Helena M. Kinney aforesaid executed a deed conveying the house and lot in North Salt Lake to the defendant for $3,000. The defendant, it seems, thus obtained the title to the house and lot from Mrs. Kinney on the same day that plaintiff had assigned his equity to her, but which assignment he left with Mr. McMillan. Plaintiff, it seems, never delivered the assignment of his equity to any one, except Mr. McMillan, who testified that he gave it to the defendant upon his request. After the defendant had declared the trade off on the North Salt Lake house and lot plaintiff

and he met and, as plaintiff testified, entered into a new agreement in writing, signed by both of them. This agreement was called a "bond for a deed," and was dated February 3, 1913. In that agreement the defendant agreed to sell to the plaintiff two lots, namely, lots 45 and 46 in block 6 of Central Park, a suburb of Salt Lake City, and to build "one four-roomed frame house according to drawings and signed specifications" thereon for the sum of $2,000, $1,000 of which was to be paid on the signing of the contract, and the remainder in monthly payments of seven dollars each, including eight per cent interest. This deal also fell through, and the plaintiff and the defendant entered into another agreement in writing, dated March 24, 1913, in which the defendant agreed to sell, and plaintiff agreed to buy, four lots in said Central Park. Two of the four lots were the same described in the contract, called a bond for a deed, and two others were added. The consideration for the four lots and "two frame houses," which the defendant agreed to erect thereon according to specifications attached to the agreement, was $4,000, $2,000 of which was acknowledged paid by plaintiff's equity aforesaid, and the remaining $2,000, with eight per cent interest, was to be paid in monthly installments of twenty-four dollars each. These houses were erected, and plaintiff some time in 1913 took possession thereof, and still was in possession when this action was tried. When the houses were completed, however, it developed that a Mr. Fox, who was a partner of the defendant, held the legal title to the four lots, and he refused to recognize the agreement entered into between plaintiff and defendant. This disagreement resulted in the dissolution of the partnership. This again left the whole matter respecting the assignment of said contract unsettled. The defendant then informed plaintiff that he would sell him a house and lot in Sugar House ward of Salt Lake City, and they on the 9th day of April, 1913, entered into a new agreement, in which the defendant agreed to sell, and plaintiff agreed to buy, a part of lot 18, block A, etc., which was a strip of ground 11.5x4.35 rods with a brick house thereon, for $3,900, $2,000 of which was acknowledged paid by plaintiff's equity in said contract, and the remaining $1,900

was to be paid in monthly payments of twenty-two dollars each, including eight per cent interest. When this agreement was entered into, plaintiff and defendant canceled the agreement respecting the four lots in Central Park by writing across the face thereof, "Void, replaced by contract date April 9, 1913," and both signed the cancellation. It seems plaintiff had not seen nor examined the property in Sugar House, but in a general way knew where it was situated before entering into the agreement; and when he saw it, and inquired of others respecting its value, he refused to accept it, and hence, within a few days thereafter, brought this action as before stated.

We remark that, although the assignment of plaintiff's equity in the ten-acre tract was assigned to Mrs. Kinney, yet the record also shows that, in an agreement between Mrs. Kinney and the defendant, he agreed to make the monthly payments as they fell due, and that Mrs. Kinney merely held the assignment as security upon another transaction between her and the defendant. It also was made to appear that the plaintiff had paid the one hundred dollars and possibly one payment of twenty-five dollars upon the contract in addition. While the evidence leaves the matter of payment in doubt, we think the weight of the evidence is to the effect that he had only paid one hundred dollars when the assignment was made and that the defendant made all the other payments, including the taxes for 1912, up to the time judgment was entered. It also was made to appear by plaintiff's evidence that the Sugar House property was not worth exceeding $1,700, while defendant's witnesses placed it at a somewhat higher figure, and the court found that its value was not in excess of $2,000. The defendant admitted, when testifying as a witness, that the property was, as he put it, "worth just under $3,000," but he said the highest figure was put on it so as to meet the large price placed on plaintiff's equity, which one of defendant's witnesses testified was worth considerably less than $2,000.

It would subserve no use to set forth the court's findings. It is sufficient to say that the court found that the plaintiff and defendant had entered into a parol agreement whereby they agreed to exchange the North Salt Lake

property  for  plaintiff's  equity  in  the  ten-acre  tract  upon
the  terms  we  have  before  stated; that  the  plaintiff  "furnished
all  the  consideration  for  the  purchase  of  the  property  last
above  described—that  is,  the  house  and  lot  in  North  Salt
Lake.   The  court,  however,  based  its  decree  for  specific  per-
formance  entirely  upon  the  parol  agreement.   We  cannot  see
how  either  the  foregoing  findings  of  fact  or  judgment  decree-
ing  specific  performance  can  be  upheld.

There  is  absolutely  no  competent  evidence  from  which  any
one  can  infer  or  find  that  the  alleged  parol  agreement  to
exchange  the  North  Salt  Lake  house  and  lot  for  plaintiff's
equity  in  the  ten-acre  tract  was  ever  consummated.   Indeed,
all  that  it  amounted  to  was  that  the  parties  were  talking
back  and  forth  and  proposing  terms.   To  say  that  an  agree-
ment  ever  was  consummated  is  contrary  to  all  the  evidence.
It  is  not  claimed  even  that  the  plaintiff  ever  paid  or  tendered
any  part  of  the  $1,000  which  he  was  to  pay  in  addition  to
the  equity.   All  that  is  claimed  in  that  regard  is  that  Mc-
Millan  could  have  raised  the  $1,000  upon  a  mortgage  upon  the
property.   The  fact  remains,  however,  that  he  did  not  raise  it,
and  before  he  did,  if  he  could  have  done  so,  the  defendant
declared  "the  deal  off"; and  hence  nothing  further  was  either
done  or  attempted  in  that  direction.   Indeed,  if  plaintiff  had
received  back  his  assignment  of  his  equity,  the  whole  matter
would  have  been  closed  between  him  and  the  defendant.   The
plaintiff,  however,  desired  to  move  into  town,  so  that  he  could
follow  his  trade  of  carpenter,  and  thus  entered  in  the  new
agreement  we  have  set  forth.   That  the  plaintiff  never  re-
garded  that  he  had  consummated  a  deal  or  entered  into  a
contract  with  the  defendant  respecting  the  North  Salt  Lake
property  is  best  evidenced  from  the  fact  that  on  the  18th  day
of  February,  after  the  defendant  had  called  the  "deal  off,"
and  McMillan  had  demanded  from  the  plaintiff  his  commis-
sion  for  making  the  trade,  he,  in  answer  to  McMillan's  claim,
wrote  a  letter  directed  to  McMillan,  in  which  he  said:

"But  as  you  did  not  make  the  trade  I  do  not  see  how  that
you  can  make  a  claim  for  commission  from  me  on  something
which  has  never  taken  place."

This was the position plaintiff took while the whole matter was fresh in his mind, and he manifestly was correct. Finally, however, the differences existing between the plaintiff and the defendant culminated in this lawsuit.

If we assume that the parol contract was entered into and consummated as found by the court, yet it is also true that both parties agreeing thereto could as readily have abrogated the same by substituting another contract therefor, just as was done. The new agreement having been entered into unconditionally, its failure for any cause or its breach by either party could not reinstate the parol agreement even if one had been entered into. This is too elementary to require either argument or authority. Not only was the parol agreement replaced by a written agreement, but this new agreement was in turn by mutual consent superseded by another one relating to the Sugar House property, which property took the place of the four lots and two houses in Central Park.

Neither can it support the judgment for specific performance to say that the plaintiff was defrauded by the parol or by any substituted agreement. If it is true that plaintiff was deceived and defrauded, he had his remedy. His remedy was to have gone into court, electing to rescind the contract upon the ground of fraud or deceit, and ask to be placed in *statu quo*, and, if such could not be done, he could have recovered judgment in that action for such damages as he might prove that he suffered by reason of defendant's fraud or misrepresentation. Plaintiff could, however, not voluntarily enter into substituted agreements, and, when they failed or were breached, ask for specific performance of any one which he might select. Courts cannot legally revive rescinded or superseded agreements. Neither can the parties do that, except by mutual consent. Courts, in case of fraud or misrepresentation, may, however, under certain circumstances and in a proper action, place the injured party in *statu quo*, if that is possible, and, when that cannot be done, they may compensate him in damages.

The contention that the judgment should prevail upon the theory of a constructive trust is not tenable, for two reasons:

Appeal from Fourth District.

(1) Because the court based the decree of specific performance entirely upon the parol agreement which it found was entered into between the plaintiff and defendant respecting the North Salt Lake property; and (2) because there is no evidence in this record which would sustain such a theory. In no possible view, therefore, can the judgment be sustained.

In view, however, that both plaintiff's counsel and the court proceeded upon an erroneous theory respecting plaintiff's remedy, we shall not direct a judgment, as we might do, but shall merely reverse the judgment and remand the cause, with directions to grant a new trial. The defendant to recover costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.